UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | CR.NO. 08-20-01S |
| | ) | |
| LUIS SANCHEZ | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE

## ARGUMENT

THE LEGAL STANDARD

The Fourth Amendment's warrant requirement is meant to protect people from unreasonable intrusion by the government into their homes. The Warrant Clause guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Any search intruding upon [an individual's] privacy interest must be justified by probable cause and must satisfy the particularity requirement, which limits the scope and intensity of the search." *United States* v. *Bonner*, 808 F.2d 864, 867 (1st Cir. 1986) (citing *United States* v. *Heldt*, 215 U.S. App. D.C. 206, 668 F.2d 1238, 1256 (D.C. Cir. 1981)). "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." *United States v. Ferreras*, 192 F.3d 5, 10 (1st Cir. 1999). The issuance of a warrant must satisfy two requirements for constitutionality under the Fourth Amendment.

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed--the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched--the so-called 'nexus' element." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999) see *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996). With regard to the "nexus" element, the task of a magistrate in determining whether probable cause exists is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). In order to establish probable cause, the facts presented to the magistrate need only "warrant a man of reasonable caution" to believe that evidence of a crime will be found. *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983)

(plurality opinion). The probable cause standard "does not demand showing that such a belief be correct or more likely true than false." *Id.* United States v. Feliz, 182 F.3d 82.

The issuing magistrate ordinarily considers only the facts set forth in supporting affidavits accompanying the warrant application. *See, e.g., Whiteley* v. *Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971); *Aguilar* v. *Texas*, 378 U.S. 108, 109, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *United States* v. *Klein*, 565 F.2d 183, 186 n.4 (1st Cir. 1977). Under the "probable cause" standard, the "totality of the circumstances" disclosed in the supporting affidavits must demonstrate "a *fair probability* that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) (emphasis added); *United States* v. *Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992), *cert. denied*, 507 U.S. 959, 122 L. Ed. 2d 758, 113 S. Ct. 1382 (1993).

Thus, to determine the sufficiency of the affidavit, we look to "whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search either the premises or the person." *United States* v. *Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997) (quoting *Illinois* v. *Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

In Khounsavanh, the Court stated, "A probable cause determination is fundamentally a fact-specific inquiry. No one factor possesses talismanic powers. Because of the importance of Fourth Amendment, U.S Const. amend. IV, freedoms to every American and because of the fact-specific nature of the probable cause inquiry, the contention that a controlled buy should be per se sufficient to establish probable cause is rejected. Every case must be evaluated on its own facts and circumstances, with due consideration to the totality of all the circumstances in that particular case. The fact that a controlled buy may frequently present circumstances warranting a finding of probable cause cannot remove from the neutral scrutiny of a magistrate and a reviewing court the existence of probable cause in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular affidavit in support of a warrant application justified the issuance of the warrant" *United States* v. *Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997)

In the instant case, if the Court were to look at the fact-specific nature regarding the warrant affidavit for Mr. Sanchez and/or 3 Flora Street, Providence Rhode Island as a separate incident then the case fails for lack of probable cause. The Court in Khounsavanh, rejected the contention that a "controlled buy" would per se be sufficient to establish probable cause. If a controlled buy is not per se probable cause, then we have absolutely no probable cause in this case. In the instant case, not only do we not have a "controlled buy" from 3 Flora Street, Providence RI or a "controlled buy" from Mr. Sanchez we have no evidence whatsoever tying in 3 Flora Street or Mr. Sanchez to any crime. There is no evidence that is verified or substantiated that Mr. Sanchez has committed any crime. There is no nexus at all tying in 3 Flora Street, Providence Rhode Island to any crime as well. The Police in the warrant affidavit merely give a general statement that 3 Flora Street is a "stash" house. The Police never state how they know those facts. What we actually have is a one size fits all search warrant affidavits. The police have placed a bunch of facts in a search warrant affidavit that they are using for

multiple targets, some of which are valid and some of which are not. The Police have brought fourth numerous search warrant targets in one affidavit to apparently overwhelm and disguise the true extent of the drug ring and to push through a warrant that ordinarily would fail for lack of probable cause.

In addition, the use of confidential informants in criminal investigations is commonplace. *See, e.g.*, *United States v. Manning*, 79 F.3d 212, 220 (1st Cir. 1996); *United States v. Vargas*, 931 F.2d 112, 115-16 (1st Cir. 1991). The practice has been characterized as a necessary part of police work. *See* *Gates*, 462 U.S. at 237-38. What is more, an informant's tales need not invariably be buttressed by extensive encomia to his veracity or detailed discussions of the source of his knowledge. While an informant's truthfulness and basis of knowledge are "highly relevant in determining the value of his report," the Court has cautioned that "these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case." 462 U.S. at 230. United States v. Schaefer, 87 F.3d 562, (1st circuit 1996).

The Police never put in the warrant affidavit, whether or not the confidential informant is reliable, whether they have ever used him/her before, whether the informant has given information in the past that has been proven reliable. The police never state when the informant gave the Police the information. In any event the confidential informant according to the affidavit does not have any information as it pertains to Mr. Sanchez, even though the Police in the affidavit state that the investigation has been ongoing for the past year. The Police go on to state that the (unverified and unsubstantiated) confidential informant said that the drug ring utilizes Dodge Durango's with a hidden compartment to transport their narcotics. The police do not have any informant nor has there been any surveillance (according to the affidavit) that identified Mr. Sanchez as operating a Dodge Durango ever during the year long investigation. In the early stages of the investigation, according to the affidavit, (presumably over a year ago) Mr. Sanchez and others were seen going to 36 Sterry Street, Pawtucket, Rhode Island, for short period of time and leaving. The Police state that two (unverified and untested) confidential informants said it was a "stash " house. The question becomes how and why did these untested and unverified confidential informants believe it was a "stash" house. We have to ask that question because it is not answered in the affidavit as it should be.

Among others, the factors that may contribute to a "probable cause" determination include whether an affidavit supports the probable "'veracity' or 'basis of knowledge' of persons supplying hearsay information," *id.*; whether informant statements are self-authenticating, *see, e.g.*, *Taylor*, 985 F.2d at 5 (noting that affidavit may support informant's veracity "through the very specificity and detail with which it relates the informant's first-hand description of the place to be searched"); whether some or all the informant's factual statements were corroborated wherever reasonable and practicable (e.g., through police surveillance); [5] and whether a law-enforcement affiant included a professional assessment of the probable significance of the facts related by the informant, based on experience or expertise, *see* *United States v. Hoffman*, 832 F.2d 1299, 1306 (1st Cir. 1987) (noting that law-enforcement affiants were "specially trained in the ways of drug trafficking"). None of these factors is indispensable; thus, stronger evidence on one

or more factors may compensate for a weaker or deficient showing on another. *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996) *See Taylor*, 985 F.2d at 5; *United States v. Nocella*, 849 F.2d 33, 37 (1st Cir. 1988); *United States v. Ciampa*, 793 F.2d 19, 22 (1986).

In the instant case, the police applied for and were granted a search warrant from a Rhode Island District Court Magistrate. The Police were actually granted 5 separate warrants to search different locations all using the same warrant affidavit. (See attached warrant affidavits) The warrant affidavit identifies certain individuals and certain addresses with varying levels of information. The warrant affidavit neither states how or why the police believe that Luis Sanchez and/or 3 Flora Street, Providence RI is involved in the drug trade other than a Dodge Durango RI registration 756-416 is parked in front at all time of the day and night that the Police allege was used in an earlier drug transaction. There is no indication in the warrant application who was seen driving that Dodge Durango, whether or not any drug transaction were done from that vehicle after it was returned to its' owner or whether or not anyone has ever seen the driver of the car deliver drugs to 3 Flora Street, Providence R.I. or any where else. The warrant affidavit is full of conclusory language that could be utilized to search any house in America. There is absolutely no indication in the warrant affidavit attesting to the veracity or basis of knowledge of an informant if that is where the Police received there information about Luis Sanchez and 3 Flora Street. There is no indication at all how the Police know that 3 Flora Street, Providence RI is a "stash" house. There is no indication whatsoever that anyone has ever seen Cocaine or any narcotics in the apartment @ 3 Flora Street or that anyone has ever seen drugs delivered to that location or that anyone has ever stated that drugs could be found at that location. The information contained in the warrant affidavit could be used and substituted for any address in the Country that is how vague and unsubstantiated the evidence is. In fact, the information obtained for the unverified and unsubstantiated confidential source says that the organization utilizes the Dodge Durango's to transport narcotics, yet Luis Sanchez according to the warrant affidavit drives and operates a 1997 Ford expedition RI registration 726-946. There is nothing in the warrant affidavit that states Mr. Sanchez's vehicle has a hidden compartment or transports narcotics. The warrant affidavit states that a Dodge Durango which was seized during a drug bust in the state of Maine and somehow returned to the owner, has through surveillance been seen at all times of the day and night at 3 Flora Street, Providence RI.. There is nothing in the affidavit that states any resident of 3 Flora Street has ever been seen driving it. In fact according to the affidavit no one has been observed driving this Dodge, so one is left to wonder how it is transporting narcotics. It appears from the warrant affidavit that 36 Sterry Street; Pawtucket RI may be a place where narcotics are stored but no evidence that relates to 3 Flora Street, Providence RI. In fact, the information in regard to 36 Sterry Street, Pawtucket Rhode Island is sketchy at best.

**Staleness**

Also, there is a staleness issue in regard to the information as well. But courts confronting suppression motions do not measure the timeliness of collected information mechanistically; merely counting the number of days elapsed. *See United States v. Bucuvalas*, 970 F.2d 937, 940 (1st Cir. 1992), *cert. denied*, 507 U.S. 959, 122 L. Ed. 2d 758, 113 S. Ct. 1382 (1993). Rather, a number of integers must be factored into the calculus -- e.g., the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant -- and the likely endurance of the information must be gauged on that basis. *See id.*; *see also United States v. Moscatiello*, 771 F.2d 589, 597 (1st Cir. 1985), *vacated on other grounds*, 476 U.S. 1138 (1986). The longer the expected duration of the criminal activity and the longer the expected life of the items attendant to it, the more likely that a datum from the seemingly distant past will be relevant to a current investigation. The target's ownership of the real estate to be searched influences the staleness calculus. *See Bucuvalas*, 970 F.2d at 941 (explaining that information is more likely to be timely when it concerns items stored at a permanent locus). Finally, it is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale. *See United States v. Nocella*, 849 F.2d 33, 40 (1st Cir. 1988). In cumulation, these factors make us hesitant to characterize the challenged information, even if it is not of very recent vintage, as stale. United States v. Schaefer, 87 F.3d 562, (1st circuit 1996).

A long delay in seeking a search warrant can create difficulties if the information is stale (emphasis omitted); *United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir. 1976) ("It is well established that the temporal proximity or remoteness of the events observed has a bearing on the validity of a warrant."). There is no one-size-fits-all rule for determining staleness: "Factors to be considered in determining whether an affidavit is stale include the nature of the criminal activity under investigation and the nature of what is being sought." *United States v. Reiner*, 500 F.3d 10, 15 (1st Cir. 2007) (citation and internal quotation marks omitted); *see also Dauphinee*, 538 F.2d at 5 ("[N]o hard and fast rule can be formulated as to what constitutes excessive remoteness, because each case must be judged in its circumstantial context."). The First Circuit has further elaborated:

Staleness is not measured merely on the basis of the maturity of the information but in relation to (1) the nature of the suspected criminal activity (discrete crime or regenerating conspiracy), (2) the habits of the suspected criminal (nomadic or entrenched), (3) the character of the items to be seized (perishable or of enduring utility), and (4) the nature and function of the premises to be (mere criminal forum or secure operational base).

Habits of Suspect. "Obviously, if a criminal defendant moves frequently with the hope of avoiding detection or capture, the probability that evidence of his or her criminal conduct will be found in a given location diminishes rapidly with the passage of time."

In this case although we do not know from the affidavit how the police know that 3 Flora Street, Providence RI is a "stash" house, other than vague and general statements that it

is. The factors above would indicate that the information is not only "stale", it is non existent. There is no statement that narcotics are presently in the apartment at 3 Flora Street, Providence RI. There is no statement or evidence that anyone in the world has ever seen narcotics at 3 Flora Street, Providence, RI at any time. There is no evidence that any one has observed any narcotics being unloaded and deposited at 3 Flora Street, Providence, RI at any time. The only information we have is a generalized statement that 36 Sterry Street, Pawtucket RI was a "stash" house and has now moved to 3 Flora Street, Providence RI. We also know according to the warrant affidavit that Rafael Guzman goes to New York every two weeks presumably to replenish the cocaine. That Rafael Guzman was going there on December 7, 2007 and that he was returning. that day. It certainly appears from a reading of the warrant affidavit the Police were going to wait until the drugs were off loaded to the "stash" house presumably 3 Flora Street Providence RI and then execute the search warrant. However, that did not happen and it appears that the Police had a predisposed plan to stop Mr. Guzman at the border, in Hopkinton Rhode Island and execute the search warrant and seize all the narcotics that he was carrying. The drugs never made it to 3 Flora Street if they were headed there at all. The Warrant is intentionally vague as to this point so that the State District Court Magistrate is left with presumption that the narcotics would be seized at 3 Flora Street. If the police knew that Mr. Guzman would go to New York every 2 weeks to pick up 10-15 kilos of cocaine then one can presume that would be to replenish the inventory of narcotics, thereby leaving one to conclude that the information that drugs would be found at 3 Flora Street "stale", since presumably the "stash" house has run out of narcotics and hence the reason for the trip to New York. The actual amount seized from Mr. Guzman in Hopkinton, Rhode Island was 2 kilograms of cocaine, thereby leaving serious doubt as to the informant's information. The fact that such a small amount of narcotics were seized would lead to serious doubt that a "stash" house was even needed. A reading of the warrant affidavit would give rise to the conclusion that the State District Court Magistrate was mislead in believing that the drugs were headed from New York to the supposed "stash" house In Providence RI. There is nothing in the affidavit for a Magistrate to conclude that the drugs would be intercepted in Hopkinton, Rhode Island from New York. Also, the information in the warrant application although unverified or substantiated is that this is a new "stash" house, that the "stash" house is a rental unit and has apparently moved from a prior location. It is not a secure facility in that it is nomadic in nature and the items to be seized are certainly perishable (cocaine). It is difficult to identify whether or not the information in regard to 3 Flora Street being a "stash" house is stale. We do not know whether or not there was a long delay or short delay in placing the information in a warrant affidavit because we do not have any indication of how the police believe 3 Flora Street, Providence, RI is a "stash" house, so in that sense it is difficult to quantify the delay, so called. It certainly can be said that if a defendant moves frequently, which the Police allude to here, then the probability of finding narcotics in a given locations diminishes with time.

As the Court stated in Wilkinson, "the "commission" and "nexus" elements in the "probable cause" analysis each include a temporal component. The issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavits, but must determine, *inter alia*, whether the totality of the circumstances

reasonably inferable from the affidavits demonstrates a "fair probability" that evidence material to the "commission" of the probable crime will be disclosed at the search premises at about the time the search warrant would issue, rather than at some remote time." *See Sgro v. United States*, 287 U.S. 206, 210, 77 L. Ed. 260, 53 S. Ct. 138 (1932); *United States v. Wilkinson*, 926 F.2d 22, 27 (1st Cir.), *cert. denied*, 501 U.S. 1211, 115 L. Ed. 2d 985, 111 S. Ct. 2813 (1991).

## Franks

In addition, a Franks hearing is warranted in this case.

The Supreme Court held, in Franks V. Delaware, 438 U.S. 154 (1978), that allegations of such misstatements or omissions necessitate an evidentiary hearing. Furthermore, upon proof that the statements or omissions are misleading, the false or misleading information must be excised from the affidavit and the affidavit examined for a probable cause determination. Id. at 171-172.

A Franks hearing is warranted where the defendant makes a "substantial preliminary showing" that (1) a false statement, (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause. United States v. Ranney, 298 F.3d 74, ( 1st cir. 2002) citing Franks, 438 U.S. at 155-56.

In the context of a Franks hearing, to prove reckless disregard for the truth, a defendant must prove that the affiant to the search warrant affidavit in fact entertained serious doubts as to the truth of the allegations. Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations, United States v. Ranney, 298 F.3d 74 (1st cir. 2002)

An affidavit submitted in support of a search warrant application is presumed valid, but that presumption may be surmounted by a showing that it contains either (1) a false statement made knowingly and intentionally, or with reckless disregard for the truth, or (2) technically accurate statements that have been rendered misleading by material omissions. United States v. Grant, 218 F.3d 72 (1st cir. 2000)

A defendant is entitled to a Franks hearing upon a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." United States v. Whitworth, 856 F.2d 1268, 1280 (9th Cir. 1988) (quoting United States v. Stanert, 762 F.2d 775, 781 (9th Cir.), modified, 769 F.2d 1410 (1985)).

In this case the warrant affidavit contains probably technically correct statements that are misleading by leaving out certain facts known to the Police at the time the warrant was applied for. The statements were left out intentionally and with reckless disregard for the truth. The Police certainly knew that at the time of applying for the warrant that they

were going to execute the search warrant once Mr. Guzman crossed the Rhode Island border. In fact they probably had the Police in place and ready to go during the time period of applying for the warrant application and the less than 2/12 hour return trip to the State of Rhode Island by Mr. Guzman. By neglecting to put that information in the warrant application, a State District Court Magistrate is left with the impression that the 10 – 15 kilograms of cocaine (in actuality 2 kilograms were seized) would be dispersed to the various "stash" houses once the currier returned to Rhode Island from New York, where they then would be seized by the Police. This warrant application is akin to an anticipatory warrant. An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future times (but not presently) certain evidence of crime will be located at a specified place. Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time--a so-called "triggering condition." For instance, that the execution of a search warrant would not occur unless and until specific contraband had been received by a person(s) and had been physically taken into the residence. If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location; by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued. United States v. Grubbs, 547 U.S. 90 (United States Supreme Court 2006). In the instant case, although the warrant is not labeled an anticipatory warrant one is left with the impression, by design that is what is contemplated. In fact the police knew from the outset that the narcotics were never going to be allowed to make it to the alleged "stash" houses. This is further evidence that there is not probable cause to believe that 3 Flora Street is a "stash" house. Because if the Police had the requisite probable cause they would have allowed the narcotics to be dispersed and then execute the warrants. This never happened. The Police by design have left the impression in the State District Court magistrate's mind that it is anticipated that the drugs would make it the alleged "stash" houses where then their would be cause to seize the narcotics.

**The Leon Exception**

It is inevitable that the Government will concede that probable cause is lacking and will instead argue that the Leon exceptions apply. I would strongly suggest that because of the utter lack of probable cause and the other issues that have been raised that the Government can not and should not be able to avail themselves of the Leon good faith exception.

Once the trial court elects to bypass the merits and proceed with the *Leon* analysis, moreover, the "probable cause" focus shifts. Since no deterrent purpose is served by sanctioning "objectively reasonable" law enforcement conduct, *see* *United States v. Ricciardelli*, 998 F.2d 8, 15 (1st Cir. 1993) (citation omitted), the "extreme sanction" of exclusion is inapplicable to evidence seized pursuant to a search warrant obtained in an "objectively reasonable" manner from a neutral magistrate, even assuming the warrant or supporting affidavits were defective, *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996) *see* *Leon*, 468 U.S. at 921, 926.

The Supreme Court employed four exemplars in *Leon* to outline the ongoing role it envisioned for "exclusionary rule" deterrence in circumstances where evidence is seized pursuant to a search warrant: (1) the magistrate is "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) the magistrate "wholly abandons his [detached and neutral] judicial role"; (3) the warrant is "so facially deficient [e.g., failing to list, with sufficient particularity, the evidence to be seized] . . . that the executing officers cannot reasonably presume it to be valid"; or (4) the supporting affidavits are "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" 468 U.S. at 923 (citing *Brown v. Illinois*, 422 U.S. 590, 610-11, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975) (Powell, J., concurring in part)). The instant Leon dispute implicates only the latter category. *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996)

It is clear from the four corners of the warrant affidavit, that the so called Leon factors can not save the evidence form suppression. The warrant application is not only so facially deficient that a reasonable officer would not deem it to be valid, but the supporting affidavits are "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and also the magistrate was mislead as outlined previously in my memorandum.

Wherefore the defendant moves that this Honorable court suppress any and all evidence seized from the person of Mr. Sanchez as well as the gun, cocaine base, digital scales and any other items seized from Mr. Sanchez and/or 3 Flora Street, Providence RI.

Respectfully submitted,
Luis Sanchez
By his Attorney,

____________________________

Terence Livingston, Esq.
681 Smith Street
Providence, RI 02903
(401) 861-8121

**CERTIFICATION**

I hereby certify that a true and accurate copy of the within Motion was mailed postage prepaid to: Sandra Beckner, U.S. Attorney, U.S. Attorney's Office, Fleet Center, 8th Floor, 50 Kennedy Plaza, Providence, RI 02903 on this the ____ day of April 2008.

____________________________