IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | Cr. No. 08-20S |
| | ) | |
| LUIS M. SANCHEZ | ) | |

GOVERNMENT'S TRIAL MEMORANDUM

I. The Indictment and Elements

The indictment charges LUIS M. SANCHEZ with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Counts I), being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count II), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count III).

The elements of Count I are as follows:

First, that defendant on or about December 7, 2007 possessed cocaine base, either actually or constructively;

Second, that he did so with a specific intent to distribute the cocaine base over which he had actual or constructive possession; and,

Third, that he did so knowingly and intentionally.

If the jury finds that the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 5 grams or more of cocaine base?

The elements of Count II are as follows:

First, that the defendant has been convicted of a crime punishable by a term of imprisonment exceeding one year;

Second, that the defendant possessed the firearm described in the indictment; and,

Third, that the firearm was connected with interstate commerce.

The elements of Count III are as follows:

First, that the defendant committed a drug trafficking crime, and,

Second, that the defendant possessed a firearm in furtherance of the commission of that crime.

## II. Factual Summary

The government expects the evidence in this case to show the following:

On December 7, 2007, Detective Dennis Smith, a detective with the Pawtucket Police Department and a task force agent with the U.S. Drug Enforcement Administration Task Force, sought and obtained search warrants for several vehicles and locations in Rhode Island, including 3 Flora Street, 2nd Floor, Providence, Rhode Island, the residence of the defendant. After Detective

Smith obtained these warrants, Special Agent Jamie Schiffer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and various detectives with the Providence Police Department executed the warrants for 3 Flora Street, 2nd Floor, Providence, Rhode Island, and the Dodge Durango, RI Registration 756-416.

Prior to the execution of the warrant, Luis M. Sanchez was observed exiting the Dodge Durango, RI Registration 756-416, and entering 3 Flora Street. Shortly thereafter, the officers entered the common hallway of 3 Flora Street and observed Sanchez exit the 2nd Floor apartment. Sanchez was ordered to place his hands on his head. Instead, Sanchez reached into his pocket and removed a plastic bag of crack cocaine which he threw to the floor. The crack cocaine was analyzed at the laboratory where it was determined to contain cocaine base and weigh 6.78 grams.

During the execution of the warrant at 3 Flora Street, 2nd Floor, officers seized a digital gram scale and a sifter from the kitchen. Next to the scale were 16.21 grams of crack cocaine. The crack cocaine was analyzed at the laboratory and determined to contain cocaine base. In a bedroom, officers located paperwork in the name of Luis Sanchez, including a social security card and a birth certificate. In another bedroom, on top of a television, detectives located two digital scales and numerous plastic bags. Sanchez's fingerprints were recovered from these scales. In that same bedroom, detectives found a

large, black, duffel bag. Inside the duffel bag, detectives found a Glock gun case containing a Glock, Model 19, 9mm, semi-automatic pistol, serial number EYM235, and two loaded magazines. One of the magazines was inside the pistol. Paperwork in the name of Luis Sanchez, including a United States passport, was also found inside the duffel bag.

While searching Sanchez's person, officers seized a cellular phone, a wallet, $202, and the keys to the Dodge Durango, RI Registration 756-416. While searching the Durango, officers found a hidden compartment, like those commonly used to transport narcotics, under the rear seat of the car.

## III. Legal Issues

### A. Fed.R.Evid. 404(b)

The government may introduce evidence that the defendant, LUIS M. SANCHEZ, was convicted in 2002 of Manufacture/Possess/Deliver Schedule I/II Controlled Substance, Cause No. P2-2002-1677B. This evidence is offered to prove the defendant's knowledge, intent and motive to distribute narcotics seized from 3 Flora Street. See United States v. Landrau-Lopez, 444 F.3d 19, 23-24 (1st Cir. 2006) (allowing testimony regarding the defendant's prior drug dealings with a witness to show knowledge and intent); United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996) ("[W]hen charges of drug trafficking are

involved, this court has often upheld the admission of evidence of prior narcotics involvement to prove knowledge and intent.”); United States v. Hadfield, 918 F.2d 987, 995 (1st Cir. 1990) (affirming the district court’s decision to admit the defendants’ prior drug convictions because such convictions were probative of knowledge, intent and the working relationship between defendants).

B. Agent Opinion Evidence

The government may offer the opinion testimony of law enforcement personnel, including Task Force Agent (TFA) Joseph Colanduano and Special Agent Jamie Schiffer. These agents may testify, based upon their extensive experience and training in the field of narcotics trafficking, to the methods and operation unique to narcotics trafficking and to the techniques used by law enforcement in a narcotics investigation. The agents may testify to the price of cocaine base; the manner in which crack cocaine is manufactured, packaged, sold and used; the equipment used in narcotics trafficking; and, the tactics used by drug dealers to evade detection by law enforcement.

Specifically with respect to the equipment seized in this case, the agents may testify that a sifter is used in the preparation of narcotics for distribution, and they will explain how it is used. They will also testify that scales, baggies or other packaging material, vehicles with hidden compartments, and

firearms are common "tools of the trade" in the narcotics business. The agents may explain how each of the above-listed items of equipment are used in the drug trade and why.

Based upon their training and extensive experience, the agents may testify that the crack cocaine seized in this case was a quantity typically held for distribution. They may testify to the price of an ounce of crack cocaine, and the effect on price per gram as the cocaine is sold in smaller quantities.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); see United States v. Pinillos-Prieto, 419 F.3d 61, 71-72 (1st Cir. 2005) (allowing agent testimony regarding the dangerous nature of drug organizations and why organizational leaders as well as innocent observers are not present during the actual handoff of narcotics); United States v. Garcia-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (agent permitted to testify regarding the structure and operation of a typical drug conspiracy); United States v. DiMarzo, 80 F.3d 656, 659-60 (1st Cir. 1996) (allowing testimony that drug dealers do not take innocent observers to drug deals); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

Likewise, agents may testify regarding the “tools of the trade” in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding “‘tools of the trade’”). In addition to testifying regarding the “tools of the trade,” agents have been permitted to testify about the locations in which drug activity occurs. See

United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); Ayala-Pizarro, 407 F.3d at 28-29 (allowing testimony regarding how drug points operate).

C. Fingerprint Analysis

The government will introduce the testimony of Detective Patricia Cornell, an expert in the recovery, analysis and comparison of fingerprints. Detective Cornell analyzed the evidence seized for fingerprints and recovered the latent prints of the defendant on two of the scales. If the Court allows the government to introduce a certified copy of the defendant's prior conviction to prove knowledge, motive, and intent, then Detective Cornell will testify based upon a fingerprint comparison that the defendant is the same Luis Sanchez who was convicted in P2-2002-1677B.

## IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover.

## V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that it will take two days to conduct the trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE,
UNITED STATES ATTORNEY

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2008, a copy of the within "Government's Trial Memorandum" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. Terence Livingston
681 Smith Street
Providence, Rhode Island 02908
(401) 861-8121

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj